UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SARAH RAMOS, ANGEL SUAREZ, and
WILLIAM SUAREZ,

     Plaintiffs,

   - against -

CITY OF NEW YORK, DETECTIVE ABDIEL
ANDERSON, DETECTIVE JOSE
MARRERO, DETECTIVE DAVID J.
ROBERTS, SERGEANT ANGEL BONES,
POLICE OFFICER JONATHAN WALLY, and
JOHN and/or JANE DOES,

     Defendants.

**<u>OPINION AND ORDER</u>**

15 Civ. 6085 (ER)

---

<u>Ramos, D.J.:</u>

   Plaintiffs Sarah Ramos, Angel Suarez, and William Suarez bring this action pursuant to

42 U.S.C. § 1983 and New York State law against the City of New York, Detectives Abdiel

Anderson, Jose Marrero, and David J. Roberts, Sergeant Angel Bones, and Police Officer

Jonathan Wally (together, "Defendants"). Plaintiffs assert claims for, among other things,

unreasonable search and seizure, false arrest, false imprisonment, and malicious prosecution in

violation of their Fourth and Fourteenth Amendment rights.

   Before this Court is Defendants' motion for summary judgment. For the reasons

discussed below, Defendants' motion is GRANTED in part and DENIED in part.

I. **Background**[1]

On August 2, 2012, Plaintiffs Sarah Ramos and her husband, Angel Suarez, went to a lot located between 2315 and 2317 Morris Avenue in the Bronx, New York. Defs. 56.1 ¶ 3. The lot is situated between two buildings and includes a front area, shed, and back area accessible only through the shed. Pls. 56.1 ¶ 45. Plaintiffs claim that the area, which they describe as a community garden, had plants and pigeon coops, and that a dog was kept on the lot. *Id.* at ¶¶ 45, 48.

That day, dressed in plainclothes, Detective Jose Marrero and non-party Detective Lopez of Bronx Narcotics were conducting observations for suspicious drug activity in the area of 183rd Street and Morris Avenue. Defs. 56.1 ¶ 2. At approximately noon, Detective Marrero communicated via radio to a field team that included Sergeant Angel Bones and Detectives David Roberts and Abdiel Anderson (together, the "Officer Defendants"), that he had observed a drug transaction take place at the lot,[2] that the alleged buyer was female, Hispanic, and light-

---

[1] The following facts are drawn from Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Defs. 56.1"), Doc. 65, and Plaintiffs' Rule 56.1 Counter-Statement in Opposition to Defendants' motion for summary judgment ("Pls. 56.1"), Doc. 71, and the parties' supporting submissions.

Defendants argue that the Court should strike Plaintiffs 56.1 statement because, among other things, it is "inappropriately replete with narrative argument." Defendants' Reply Memorandum of Law in Further Support of their Motion for Summary Judgment ("Defs. Reply Memo") (Doc. 81) at 1-2. Defendants' 56.1 statement is ten pages long. Plaintiffs' 56.1 statement consists of thirty-two pages, twenty-one of which are devoted to challenging Defendants' facts. The remaining pages provide an alternative version of the events. While some of Plaintiffs' statements include proper citations to documents in the record, many are improper arguments. For example, Plaintiffs include an entire discussion of the NYPD Patrol Guide Procedures and the chain of evidence—for approximately six pages—in order to challenge whether Detective Anderson in fact recovered drugs from the lot. Yet, Plaintiffs do not make this argument in their memorandum. To the extent that Plaintiffs attempted to bypass the Court's twenty-five page limit for memoranda by including arguments in their 56.1 statement, it is improper.

Consequently, where Plaintiffs' 56.1 statement makes improper arguments, the Court has not relied on it.

[2]

skinned, and that she had left the lot and was headed northbound on Morris Avenue towards 184th Street. *Id.* at ¶¶ 3, 7. Specifically, Defendants rely on Detective Marrero's deposition in which he stated that he saw Ramos direct a woman to Angel and Angel give the woman small objects in exchange for U.S. currency. October 26, 2016 Deposition of Jose Marrero ("Marrero Dep.") (Doc. 66, Ex. O) 15:22–17:21.

Plaintiffs dispute that Detective Marrero actually observed a drug transaction and claim that that he only saw a woman enter the shed with a man and then exit the shed and look at an object in her hands.[3] Pls. 56.1 ¶ 3. Plaintiffs rely on the testimony Detective Marrero gave at a General Order 15 hearing ("GO-15") held on the same day as the arrests at approximately 6:00 pm. At the hearing Detective Marrero stated:

> There was a female white that arrived at the location, she entered, she said hello to a female Hispanic that was standing in front of the clubhouse. And then she met up with a male Hispanic, with a . . . white tank top, which she then entered the location with. Thereafter, a second male Hispanic, with a white t-shirt followed in. Moments later, the female white, came out of the location. I noticed that she looked at something in her hands . . . She then continued outside . . . the clubhouse and said . . . goodbye to the Hispanic that she had initially said hello to. She left the location. We put that description over the point-to-point radio, to members of the field team . . . later they stopped [her] in the vehicle and found her in possession of some quantity of crack-cocaine.

*Id.* at 62. Notably, Defendant Marrero made no mention at the GO-15 hearing of actually witnessing the hand-to-hand exchange between Angel and the woman.

---

[3] A GO-15 hearing is held whenever a member of the NYPD discharges his weapon while on duty. Here, the GO-15 hearing was held to investigate the circumstances under which Detective Marrero discharged his weapon resulting in the death of the dog that was kept on the lot. Defendants' Local Civil Rule 56.1 Counterstatement ("Defs. Counter Reply 56.1") (Doc. 79) at 19; *see also* Transcript of Interview of Detective Marrero ("GO-15 Hearing Transcript") (Doc. 80, Ex. X).

After receiving the radio communication from Detective Marrero, Detective Roberts arrested the woman and upon searching her, found two bags of crack cocaine in her purse.[4] Defs. 56.1 ¶¶ 8–9. Sergeant Bones and Detective Anderson were present for the woman's arrest but did not arrest her themselves. *Id.* at ¶ 10. Sergeant Bones informed Detective Marrero—who was not present for the arrest—that the woman had been arrested and that drugs were recovered from her purse. *Id.* at ¶ 12.

After the woman's arrest, Detectives Roberts and his non-party partner Detective Gines, along with Detective Anderson, and Sergeant Bones proceeded to the lot area. *Id.* at ¶¶ 13–14. While en route, Detective Marrero radioed that he saw a man with a white tank top, who he had previously seen interacting with the woman, leaving the lot and walking northbound on Morris Avenue. *Id.* at ¶ 15. Detectives Roberts and Gines found a man matching the description, who was later identified as Angel, and stopped him. *Id.* at ¶ 19. Defendants claim that Detective Gines arrested Angel Suarez. Following Angel's arrest, Detective Roberts proceeded to the lot area where he saw Sergeant Bones standing with a woman later identified as Sarah Ramos, and a non-party male, David George. *Id.* at ¶¶ 22, 25. Both Ramos and George were subsequently arrested inside of the lot. *Id.* at ¶ 25.

---

[4] Plaintiffs also dispute that Detective Roberts found drugs on the woman because he did not document that finding in his activity log and the woman was never convicted of drug possession. Pls. 56.1 ¶ 9. In response, Defendants attach the woman's arrest form which states that she was "found to be in possession of crack cocaine," the criminal complaint charging her with possession, and the transcript of the plea hearing. Declaration of Lucienne Pierre in Support of Defendants' Reply Motion ("Pierre Reply Decl.") (Doc. 80), Ex. V. The government ultimately charged the woman with disorderly conduct, to which she pled guilty.

At some point after arriving at the lot, the Officer Defendants were made aware that a man, later identified as William Suarez, was inside the shed. *Id.* at ¶ 26. The parties' allegations diverge significantly with respect to the events leading up to William's arrest.

The Officer Defendants claim that Detective Marrero saw William run towards the back of the lot and throw an object over the fence. *Id.* at ¶¶ 27–29. They further claim that Detective Anderson, found three bags containing crack cocaine by William's feet where he was seized, and upon a search of the area on the other side of the fence, found an additional thirty-five bags of crack-cocaine. *Id.* at ¶ 33. Plaintiffs claim, however, that William was already in the back area of the lot when the Officer Defendants arrived, that he did not have drugs in his possession, and that he did not throw anything over the fence. Pls. 56.1 ¶ 28. William was arrested behind the shed. Defs. 56.1 ¶ 31; Pls. 56.1 ¶ 69. Defendants claim that William was searched incident to the arrest and that $3,786 in cash was found on his person. *Id.* at ¶ 34. Defendants also claim that upon searching Angel, they retrieved $365 in cash. *Id.* at ¶ 35. After the arrests, Plaintiffs were gathered at the front of the lot and eventually taken to the 48th Precinct where they were processed. Pls. 56.1 ¶ 77.

Detective Anderson, as the assigned arresting officer, was responsible for completing the arrest paperwork. Defs. 56.1 ¶ 36. Plaintiffs were charged with criminal possession of a controlled substance in the third degree with intent to sell, criminal sale of a controlled substance in the third degree, and criminal sale of a controlled substance in the seventh degree. Pls. 56.1 ¶ 106. The Officer Defendants claim that the information Detective Anderson included in the arrest reports was based on the information he had received from Detective Marrero who observed the drug transaction. Defs. 56.1 ¶ 38. Detective Anderson also signed the Criminal Complaint against Plaintiffs. *Id.* at ¶ 39.

On September 21, 2012, a grand jury returned a true bill against Plaintiffs. Pls. 56.1 ¶ 107. Both Angel and William filed a motion to inspect the grand jury minutes and dismiss the indictment. On March 22, 2013, the criminal court denied Angel's motion to release the grand jury minutes and found that although the evidence before the grand jury was "quite thin," it was legally sufficient to support the charges against Angel. Pierre Decl. Ex. K. Without caveat, the court also denied William's motion to release the grand jury minutes and found that the evidence before the grand jury was sufficient to support the charges against him. *Id.* Ex. L. On June 10, 2015, after "numerous" court appearances, all of the charges against Plaintiffs were dismissed on speedy trial grounds, pursuant to N.Y.C.P.L. § 30.30. Pls. 56.1 ¶ 115, Defs. 56.1 ¶ 43.

## II.    Procedural History

Plaintiffs filed the Complaint on August 3, 2015 asserting five causes of action: (1) Section 1983 claim for violations of their Fourth and Fourteenth Amendment rights; (2) *Monell* liability; (3) violation of the New York State Constitution; (4) malicious prosecution; and (5) *respondeat superior.* Doc. 1. Defendants City of New York, Detectives Marrero, Anderson, and Roberts filed an Answer on November 9, 2015. Doc. 16. On December 21, 2015, Plaintiffs filed an Amended Complaint, adding Sergeant Angel Bones and Police Officer Jonathan Wally as defendants. Doc. 18. Approximately one year later, on December 16, 2016, Defendants filed a letter requesting a pre-motion conference to seek leave to file a motion for summary judgment. Doc. 58. On February 6, 2017, Plaintiffs informed the Court that they were withdrawing their excessive force claims, including the only claim against Police Officer Wally, and also clarified that they were not asserting a *Monell* claim. Doc. 63. Defendants filed the instant motion for summary judgment on February 24, 2017. Doc. 64.

## III.   <u>Legal Standard</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might "affect the outcome of the litigation under the governing law." *Id.* (quoting *Miner v. Clinton Cty. N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).

## IV.  Discussion

### A.  Section 1983

Section 1983 grants a right of action to any "citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law.  42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that:  (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was committed by a person acting under color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  Here, Plaintiffs allege, among other things, that they were falsely arrested, subjected to an unreasonable search and seizure, and maliciously prosecuted in violation of their Fourth and Fourteenth Amendment rights.

#### 1.  False Arrest

Defendants move for summary judgment on Plaintiffs' false arrest allegations against the Officer Defendants.  Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs Memo") (Doc. 67) at 8–10.  "[A Section] 1983 claim for false arrest

derives from the Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). To establish a claim for false arrest under Section 1983, a plaintiff must prove: (1) that the defendants intentionally confined plaintiff; (2) that plaintiff was conscious of the confinement, (3) did not consent to it, and (4) that the confinement was not otherwise privileged. *See Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451 (1975)).

Defendants do not contest that Plaintiffs have properly alleged the first three elements of their false arrest claim. Thus, the only disputed element is whether the arrests were otherwise privileged; *i.e.*, whether the Officer Defendants had probable cause to arrest Plaintiffs. If the Officer Defendants had probable cause to arrest Plaintiffs, then the confinement is privileged and constitutes a complete defense to a false arrest claim. *Covington v. City of N.Y.*, 171 F.3d 117, 122 (2d Cir. 1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d. Cir. 1996)); *see also Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (noting that to avoid liability for a claim of false arrest, an arresting officer may demonstrate that he had probable cause for the arrest).

The existence of probable cause may be determined as a matter of law on summary judgment where there is no material dispute as to the relevant events and knowledge of the officers. *See Weyant*, 101 F.3d at 852. "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." [5] *Id.* When determining whether probable cause exists, courts are to

---

[5] The validity of an arrest does not depend upon a finding that the arrested person is guilty. *Cf. Lee v. Sandberg*, 136 F.3d 94, 102-103 (2d Cir. 1997) (explaining that the circumstances giving rise to probable cause exist independently

"consider those facts *available to the officer* at the time of the arrest and immediately before it" and must render a decision based upon "the totality of the circumstances." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted) (emphasis in original); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

The Officer Defendants argue that probable cause existed for the arrest because Detective Marrero observed a hand-to-hand drug transaction between Angel and a woman and that the other Officer Defendants are entitled to qualified immunity because they reasonably relied on his observations to conduct the arrests.[6] Defs. Memo at 10. Plaintiffs claim that probable cause did not exist because at the GO-15 hearing, Detective Marrero did not testify to having observed a hand-to-hand drug transaction, but rather individuals walking in and out of the shed. Pls. 56.1 ¶ 3.

### i. Detective Marrero

To be sure, if the Court were to rely only on the version of the events that Detective Marrero provided in the Criminal Complaint, it would have no trouble concluding that probable cause existed. However, taking the facts in the light most favorable to Plaintiffs, a reasonable

---

of the ultimate validity of the allegations within a given complaint); *see also Mesa v. City of N.Y.*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *10 (S.D.N.Y. Jan. 3, 2013) ("[F]alse arrest and imprisonment turn on the validity of the *initial* detainment, rather than on the *ultimate disposition* of the charges, as probable cause forms the heart of the inquiry, rather than the eventual result at trial.") (emphasis in original). Therefore, the Court does not consider the criminal court's dismissal of the indictment on speedy trial grounds in its probable cause analysis.

[6] Defendants also argue that Plaintiffs' false arrest claim against Detective Marrero fails because Plaintiffs were ultimately indicted. Defs. Memo at 8. They assert that the indictment creates a rebuttable presumption of probable cause for Plaintiffs' arrest. *Id.* This argument fails as a matter of law. *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006) ("[T]he New York Court of Appeals has expressly held that the presumption of probable cause arising from an indictment 'applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions.'") (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).

jury could conclude that probable cause did not exist to arrest Plaintiffs for the criminal sale of a controlled substance because of the apparent discrepancy between Detective Marrero's GO-15 testimony and his statements in the Criminal Complaint. If the jury credits the GO-15 testimony, which was taken on the very same day as the arrests, they may determine that Detective Marrero did not actually observe a drug transaction and therefore did not have probable cause to arrest. At the GO-15 hearing, Detective Marrero claimed that he had been stationed in the area around the lot as part of a buy-and-bust operation. At around noon, he saw a woman walk towards the shed, speak to Ramos, then head inside with Angel. When the woman exited the shed, she looked at something in her hands. Detective Marrero then communicated this observation to the field team who stopped the woman and found crack-cocaine in her possession. The Officer Defendants assumed, based on Detective Marrero's communication, that the woman had purchased drugs from the shed—as opposed to having had the drugs on her person before entering the shed—and therefore believed they had probable cause to arrest Angel and also Ramos and William—who were allegedly present during the drug transaction. However, Detective Marrero's observation as described in the GO-15 hearing is insufficient to establish probable cause as a matter of law.

Although Courts in this Circuit have found that probable cause exists when officers witness what appears to be a hand-to-hand transaction, the GO-15 hearing testimony here suggests that Detective Marrero did not observe any such interaction. *Compare Smith v. City of N.Y.*, No. 04 Civ. 3286 (TPG), 2010 WL 3397683, at *7–*8 (S.D.N.Y. Aug. 27, 2010), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013) (finding that probable cause existed because officer witnessed plaintiff engage in conversation with a man who handed Plaintiff money in return for an object); *see also United States v. Washington*, No. 02 Cr. 1574 (LTS),

2003 WL 21250681, at *2–*3 (S.D.N.Y. May 29, 2003) (finding probable cause to arrest where officer observed arrestee hand an object to another person in exchange for money in drug-prone neighborhood and narcotics were subsequently recovered from alleged buyer); *Sam v. Brown*, No. 00 Civ. 4170 (JG), 2002 WL 31102644, at *4 (E.D.N.Y. Sept. 10, 2002) (finding probable cause to arrest even though arrestee was not in possession of drugs at time of arrest where officer observed arrestee exchange small object for money with an alleged buyer, and the buyer was later found to be in possession of drugs).

Accordingly, Defendants' motion for summary judgment on Plaintiffs' false arrest claim is DENIED as to Detective Marrero.

### ii. Detectives Anderson, Roberts, & Sergeant Bones

Additionally, even though the Court found that Detective Marrero is not entitled to summary judgment on the issue of probable cause, the Court finds that Detectives Anderson and Roberts and Sergeant Bones are entitled to qualified immunity. The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994) (internal quotation marks and citations omitted). "[A]n arresting officer is entitled to qualified immunity on a claim of false arrest if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010) (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007)); *see also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999).

Here, the Officer Defendants involved in Plaintiffs' arrests reasonably relied on Detective Marrero's observations and are thus entitled to qualified immunity. *Smith*, 2010 WL 3397683, at *16 (finding that "it was objectively reasonable for [officer] to arrest plaintiff after receiving information, via a radio communication from [another officer], that plaintiff had engaged in a suspected drug transaction" thus entitling the officer to qualified immunity).

Accordingly, Defendants' motion for summary judgment on Plaintiffs' false arrest claim is GRANTED as to Detectives Anderson and Roberts, and Sergeant Bones.

### 2. Unreasonable Search and Seizure

Plaintiffs assert that they were subjected to an unreasonable search and seizure by the Officer Defendants. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Jones v. Ng*, No. 14 Civ. 1350 (AJP), 2015 WL 998467 at *10 (S.D.N.Y. Mar. 5, 2015) (alteration in original) (*quoting* U.S. Const. amend. IV). A search incident to a lawful arrest is well-established as reasonable under the Fourth Amendment. *United States v. Robinson*, 414 U.S. 218, 235–36 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."). "A search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search." *Kennedy v. City of N.Y.*, No. 12 Civ. 4166 (KPF), 2015 WL 6442237, at *16 (S.D.N.Y. Oct. 23, 2015).

Here, the Officer Defendants allege that Angel, Ramos, and William were arrested and searched—by detectives other than Detective Marrero—based on Detective Marrero's observations of a drug transaction. As discussed *supra*, the arresting Officer Defendants were

entitled to rely on Detective Marrero's observations and thus are entitled to qualified immunity. *Seitz v. DeQuarto*, 777 F. Supp. 2d 492, 501 (S.D.N.Y. 2011) ("The [S]econd Circuit has referred to an officer's reasonable belief that his search or seizure was supported by probable cause, and thus constitutional under the Fourth Amendment, as 'arguable probable cause.'") (quoting *Finigan v. Marshall*, 574 F.3d 57, 61 (2d Cir. 2009)).  Because the Court finds that a question remains as to whether there was probable cause to arrest Plaintiffs as against Detective Marrero, Plaintiffs' claim for unreasonable search and seizure against Detective Marrero also survives summary judgment.  Accordingly, Defendants' motion for summary judgment on Plaintiffs' unreasonable search and seizure claims is GRANTED as against Detectives Anderson and Roberts, and Sergeant Bones and DENIED as to Detective Marrero.

### 3.  Malicious Prosecution

Plaintiffs assert both a federal and a state law claim for malicious prosecution against the Officer Defendants.  The elements of malicious prosecution under Section 1983 are "substantially the same" as the elements under New York law; "the analysis of the state and the federal claims is identical." *Bailey v. City of N.Y.*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)).  "To establish a claim for malicious prosecution under New York law, a plaintiff must show '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'"  *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 226 (S.D.N.Y. 2006) (quoting *Posr*, 180 F.3d at 417).  In addition to these state law elements, a plaintiff must assert that there was "a sufficient post-arraignment liberty restraint to implicate plaintiff's Fourth Amendment right[]" to be free of unreasonable seizure.  *Id.* (quoting

*Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)) (internal quotation marks omitted). Probable cause is a complete defense for claims of malicious prosecution, similar to claims of false arrest. *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (quoting *Savino*, 331 F.3d at 72). A grand jury indictment creates a presumption of the existence of probable cause, which the plaintiff may rebut only by showing that the indictment was procured by "fraud, perjury, the suppression of evidence," or other bad faith conduct. *Boyd*, 336 F.3d at 76 (internal quotation marks omitted).

Here, Plaintiffs were indicted by a grand jury for criminal possession of a controlled substance in the third degree with intent to sell, criminal sale of a controlled substance in the third degree, and criminal sale of a controlled substance in the seventh degree, and thus the presumption of probable cause applies. However, because the New York criminal court denied Angel's and William's motion to inspect the grand jury minutes, Plaintiffs do not provide any information regarding the witnesses or evidence presented to the grand jury. Instead, Plaintiffs rely on the statements made in the Criminal Complaint.

### i. Collateral Estoppel

As an initial matter, Defendants argue that Angel and William are estopped from challenging the sufficiency of the grand jury proceeding because they filed motions to inspect the grand jury minutes and to dismiss the indictment in their original criminal action in New York state court and the court found that the evidence presented to the grand jury was legally sufficient to support the charges against them. Defs. Memo at 22.

Under New York law, "collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication" where that issue (1) is identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to

litigate. *Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002) (internal

quotations and citations omitted).  The litigant seeking the benefit of collateral estoppel must

demonstrate the identicality and decisiveness of the issue, and the party to be precluded bears the

burden of demonstrating the absence of a full and fair opportunity to litigate the issue in the prior

action.  *Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001).  "New York requires only that the issue

have been properly raised by the pleadings or otherwise placed in issue and actually determined

in the prior proceeding."  *Coveal v. Consumer Home Mortgage, Inc.*, No. 04 Civ. 4755 (ILG),

2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005) (internal quotation marks and citation

omitted).  Moreover, "federal district courts are obliged to accord due recognition to the

preclusive effect of state court judgments that adjudicate federal rights after full and fair

consideration, even if the state court's decision may have been erroneous."  *Harris v. N.Y. State

Dep't of Health*, 202 F. Supp. 2d 143, 157 (S.D.N.Y. 2002).

Plaintiffs claim that they did not have a fair and full opportunity to challenge the

indictment because they were not given access to Detective Marrero's August 2, 2012 GO-15

hearing testimony at the time the motion was made.  Plaintiffs argue that the testimony Detective

Marrero gave at the hearing completely contradicts the statement attributed to him in the

Criminal Complaint.  Plaintiffs Memorandum of Law in Opposition to Defendants' Motion for

Summary Judgment ("Pls. Memo") (Doc. 70) at 19–20.  To show that they did not possess

Detective Marrero's GO-15 testimony at the time of the state criminal action, Plaintiffs provide a

copy of the Bronx District Attorney's ("DA") response to Angel's discovery request pursuant to

Section 240.20(1)(g), in which the DA responded that it was not "in possession of any tapes or

electronic recordings" and that "should any additional tapes or electronic recordings come into

the People's possession, they will be provided to the defendant."  Corrected Cannan Decl. Ex. Y

(Doc. 84).  Section 240.20(1)(g) requires that the prosecutor make available for inspection any "tapes or other electronic recordings which the prosecutor intends to introduce at trial, irrespective of whether such recording was made during the course of the criminal transaction." N.Y. Crim. Proc. Law § 240.20(1)(g).  In addition, the DA also stated that the "People are aware of their [*Brady v. Maryland*, 373 U.S. 83 (1963)] obligation to furnish the defendant with exculpatory information" and that it would do so immediately.  Corrected Cannan Decl. Ex. Y. In response, Defendants claim that the information in the Criminal Complaint is completely consistent with Detective Marrero's GO-15 hearing testimony.  Defs. Counter Reply at 22.

The Court finds that Angel and William are not estopped from challenging the sufficiency of the grand jury indictment as they were not provided the GO-15 hearing audio file or testimony at the time they filed the motion to inspect.  Nothing in the record indicates that Detective Marrero's testimony at the GO-15 hearing was considered by the state court judge, prosecutor, or the grand jury.  Additionally, there is arguably a substantive difference between Detective Marrero's GO-15 hearing testimony and the Criminal Complaint sufficient to have caused the state court to have directed the DA to turn over the GO-15 testimony.  Accordingly, the Court turns to a discussion of the elements of the malicious prosecution claim.

### ii.    Initiated Criminal Proceeding

"A police officer initiates criminal proceedings for purposes of a malicious prosecution claim by having the plaintiff arraigned, filling out complaining or corroborating affidavits, or signing a felony complaint."  *Fiedler v. Incandela*, No. 14 Civ. 2572 (SJF), 2016 WL 7406442, at *10 (E.D.N.Y. Dec. 6, 2016) (citing *See Llerando–Phipps v. City of New York*, 390 F. Supp. 2d 372, 382–83 (S.D.N.Y. 2005)).  An arresting police officer may also be held liable for malicious prosecution if he "creates false information likely to influence a jury's decision and

forwards that information to prosecutors." *Cameron v. City of N.Y.*, 598 F.3d 50, 64 (2d Cir. 2010) (internal quotations omitted).

The Court finds that only Detectives Marrero and Anderson may be held liable for malicious prosecution. Detective Marrero provided the information about what he observed which led to Plaintiffs' arrests. Detective Anderson, as the arresting officer, was responsible for completing the arrest paperwork. He also signed the Criminal Complaint against Plaintiffs. Plaintiffs do not proffer—and nothing in the record suggests—that either Detective Roberts or Sergeant Bones arraigned Plaintiffs or filled out any complaints or corroborating affidavits. As such, Defendants' motion for summary judgment of Plaintiffs' malicious prosecution claims against Detective Roberts and Sergeant Bones is GRANTED.

### iii. Bad Faith Conduct

A plaintiff may overcome the presumption of probable cause "only by evidence establishing that the police witnesses have not made a complete and full statement of the facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 272 (S.D.N.Y. 2010) (quoting *Boyd*, 336 F.3d at 82-83. Here, Plaintiffs attempt to rebut the presumption of probable cause arising from the grand jury indictment by arguing that Detectives Marrero and Anderson misrepresented or lied about their observations about the drug transaction and the drugs retrieved, respectively, in order to secure the indictment. Pls. Memo at 15; *see also* Pls. Response 56.1 ¶¶ 30–33.

First, Plaintiffs claim that the statement in the Criminal Complaint that Detective Marrero "observed" Angel exchange a small object in exchange for United States currency is inaccurate. Pls. Memo at 17. In support of their argument, Plaintiffs principally rely on Detective Marrero's

GO-15 hearing testimony, in which he does not state that he saw a hand-to-hand transaction. Pls. 56.1 ¶ 87; Declaration of Marc A. Cannan in Opposition to Defendants' Motion for Summary Judgment ("Cannan Decl.") (Doc. 72) Ex. A GO-15 hearing at 7:44–8:32. Plaintiffs claim the inconsistency in the Criminal Complaint, which does describe such an observation, is sufficient to substantiate a finding of bad faith conduct in procuring the indictment against them.

Second, Plaintiffs argue that Detective Anderson lied about recovering drugs from the lot. Plaintiffs claim that William did not throw anything over the fence and that the inconsistencies in Detective Anderson's deposition about where the drugs were found, sufficiently support their theory, at least at this juncture. Detective Anderson claimed that he retrieved both the thirty-five bags of crack cocaine that William allegedly threw over the back fence, as well as the three bags recovered near William's feet. At his deposition, Detective Anderson said that he found the first three bags "right next to [William's] feet . . . on the ground." Cannon Decl. Ex. E Anderson Dep. 32:12–34:12. However, towards the end of the deposition, he claimed that William was standing on top of a doghouse and that he recovered the three bags from the doghouse. *Id.* at 134:02–135:21. Plaintiffs also highlight that Detective Anderson did not note any such retrieval of drugs in his activity log or in the omniform system arrest form, only in the property invoice. Pls. 56.1 ¶ 33. Plaintiffs claim that these inconsistencies, at the very least, create a question as to whether Detective Anderson misrepresented evidence or acted in bad faith.

The Court finds that Plaintiffs have overcome the presumption of probable cause arising from the indictment as it relates to the charge of criminal sale of a controlled substance. The inconsistencies between Detective Marrero's statements in the Criminal Complaint and his GO-15 hearing testimony raise a triable issue of fact with respect to the charge for the criminal sale of a controlled substance. The Criminal Complaint states that Detective Marrero observed Angel

exchange an object for cash.  However, at the GO-15 hearing, Detective Marrero provides an arguably different version of events.  Additionally, only Sergeant Bones testified that he remembered Detective Marrero stating that he had observed an exchange of a small object for cash.  *Id.* Ex. N, Transcript of Angel Bones Deposition dated November 2, 2016, at 17:15-18 ("[Detective Marrero] stated he observed an exchange for a small object for US currency."). Detectives Anderson and Roberts, in their depositions, could not recall the details of Detective Marrero's radio transmission and testified that Detective Marrero stated that he had observed what appeared to be a drug transaction.  Pierre Decl. Ex. P, Transcript of Abdiel Anderson Deposition dated October 20, 2016, at 17:15-18 ("[H]e observed what appeared to be a drug transaction between a female and another group of people."); Ex. Q, Transcript of David Roberts Deposition dated October 25, 2016, at 24:2-4 ("I just remember one of the [detectives] telling us that a female that was in the tan car just purchased narcotics from a male.").   Assessing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable jury could infer bad faith by finding that Detective Marrero misstated his observation of the sale in order to secure an indictment.

However, the Court finds that Plaintiffs have not overcome the presumption of probable cause arising from the indictment as it relates to the charges for possession of a controlled substance and possession of a controlled substance with an intent to sell.  Plaintiffs argue that the inconsistencies in Detective Anderson's deposition regarding the exact location where the initial three bags of crack cocaine were found create a triable issue of fact as to whether the drugs were found at all.  At his deposition, Detective Anderson first testified that he found three bags of crack cocaine in the back of the lot on the ground near William's feet, but later—after he was reminded of his testimony at the GO-15 hearing—he claimed that the three initial bags were

found on top of a dog house in the back of the lot and that William had been standing on top of the dog house. Even taking the facts in the light most favorable to Plaintiffs, no reasonable juror would find that the inconsistency in Detective Anderson's statements suggests that no drugs were discovered in William's vicinity and thus, the indictment was procured in bad faith. Indeed, Detective Anderson's discovery of drugs is well supported by the record. *See* Cannan Decl. Ex. N (attaching voucher stating that "38 ziplock w/ crack/cocaine" retrieved); Cannan Decl. Ex. P (providing the Controlled Substance Analysis Worksheet in which the thirty-eight bags were analyzed); Pierre Decl. Ex. C (attaching property invoice which states that thirty-eight bags of drugs were recovered "from ground where [William] did throw it"). Moreover, that Detective Anderson did not include in his notes the amount or exact location of where the drugs were recovered also does not undermine the Court's analysis. *See Bonds v. City of N.Y.*, No. 12 Civ. 1772 (ARR), 2014 WL 2440542, at *9 (E.D.N.Y. May 30, 2014) (holding that for a malicious prosecution claim, "the absence of certain details in [an officer's] memo book does not give rise to so strong an inference of fabrication as to satisfy the requirement of demonstrating bad faith conduct"). As a result, Plaintiffs' malicious prosecution claim against Detective Anderson is dismissed.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' malicious prosecution claim as it relates to the charge of criminal possession of a controlled substance and criminal possession of a controlled substance with intent to sell is GRANTED.

### 4. Failure to Intervene

Plaintiffs claim that the Officer Defendants failed to intervene in their false arrests and prosecution. Law enforcement officials can be held liable under Section 1983 for not intervening to protect the constitutional rights of inmates from infringement by other officers.

*Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. *Holland v. City of N.Y.*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016). However, "a police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 395 (S.D.N.Y. 2005), *aff'd in part, vacated in part, remanded sub nom.*, *McLaurin v. Falcone*, No. 05-4849-CV, 2007 WL 247728 (2d Cir. Jan. 25, 2007) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)). "If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends." *Feinberg v. City of New York*, No. 99 Civ. 12127 (RC), 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004). Additionally, where an officer may be held liable under a theory of direct participation, the failure to intervene theory of liability is inapplicable. *Hicks v. City of N.Y.*, No. 15 Civ. 04888 (PAC), 2017 WL 532304, at *11 (S.D.N.Y. Feb. 8, 2017).

Here, the Court finds that a question of fact exists as to whether there was probable cause to arrest and prosecute Plaintiffs for the criminal sale of a controlled substance. However, Plaintiffs have not shown that it was objectively unreasonable for the arresting officers to not have known that Plaintiffs were being falsely arrested and prosecuted. As stated previously, Detectives Anderson and Roberts, and Sergeant Bones was entitled to rely on Detective Marrero's observations of the purported drug transaction. *See Holland*, 197 F. Supp. 3d at 549. Additionally, because the Court finds that there was probable cause to arrest William and

prosecute Plaintiffs for criminal possession with intent to sell, Plaintiffs' failure to intervene claim in connection to the charges of criminal possession and criminal possession with intent to sell necessarily fails. Lastly, since Detective Marrero may be held liable as a direct participant in the alleged false arrest and malicious prosecution, he cannot be held liable under a failure to intervene theory. Accordingly, Defendants' motion for summary judgment on Plaintiffs' failure to intervene claim is GRANTED.

### B. State Law Claims

#### 1. Malicious Prosecution

Plaintiffs assert only two state law claims: (1) malicious prosecution against the Officer Defendants and (2) malicious prosecution against the City under a theory of *respondeat superior*. Defendants claims that Ramos' state law claims are barred because she failed to comply with requirements of General Municipal Law 50-h in that she did not provide 50-h testimony. Defs. Memo at 21. Defendants claim that Ramos did not provide 50-h testimony because Plaintiffs did not produce this testimony during discovery. *Id.* They also ask the Court to infer that Ramos was given notice and was therefore required to attend a 50-h hearing because Plaintiffs submitted evidence that Angel and William "produced themselves for 50-h testimony." *Id.*

As a condition precedent to bringing a state law tort claim against a municipality, a plaintiff must file a Notice of Claim within ninety days after her claim accrues. *See* N.Y. Gen. Mun. L. § 50-e. Upon receiving a Notice of Claim, the municipality may demand a 50-h hearing to examine "the claimant relative to the occurrence and extent of the injuries or damages for which claim is made." *Id.* at § 50-h(1). "[I]f the claimant fails to appear at the hearing or request an adjournment or postponement," the state law claims cannot proceed against the municipality. *Id.* at § 50-h(5). However, if such examination is not conducted within ninety

23

days of service of the demand, the claimant may commence the action. *Id.* at § 50-h(5). Notice of claim requirements are construed "strictly" and "[f]ailure to comply with these requirements ordinarily requires dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1998).

Plaintiffs claim that Ramos was never noticed to appear for a 50-h hearing and that Defendants' failure to produce a notice forecloses their argument. Pls. Memo at 19. In their reply, the Officer Defendants did not address this argument. The Court agrees with Plaintiffs. The General Municipal Law states that a municipality has a right to demand a 50-h hearing or examination but does not require that one be held. N.Y. Gen. Mun. L. § 50-h. Although the Officer Defendants note that both Angel and William attended 50-h hearings, nothing in the record indicates that Ramos received a notice, did not adjourn the hearing date, and was thus required to attend. *See e.g.*, *Ambroziak v. Cty. of Erie*, 177 A.D.2d 974, 974 (4th Dep't 1991) ("[W]here, as here, no examination was held within 90 days of service of the demand, and the delay in conducting the examination was solely attributable to defendants, plaintiff was free to commence the action."); *see also Seabrook v. The City of N.Y.*, No. 14 Civ. 3059 (AMD), 2016 WL 554823, at *5 (E.D.N.Y. Feb. 10, 2016) (finding that plaintiff's failure to attend a 50-h hearing was excusable because the City did not respond to the adjournment request before the statute of limitations expired).

Accordingly, Defendants' motion for summary judgment on Plaintiffs' remaining state law claims is DENIED.

### 2. *Respondeat Superior*

Plaintiffs allege that the City of New York is liable for the tort of malicious prosecution committed by the Officer Defendants under the common law theory of *respondeat superior*. Pls. Memo at 20. They also assert that because the state claims survive, the City should be held liable. *Id.* Defendants argue that Plaintiffs' *respondeat superior* claims fail because their allegations are conclusory and they cannot prove a constitutional violation. Defs. Memo at 23.

Under the common law, "a municipality may be held liable for common law false arrest and malicious prosecution on a theory of *respondeat superior.*" *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 344 (S.D.N.Y. 1999) (dismissing plaintiff's Section 1983 claim against City but allowing common law claim alleging *respondeat superior* to survive summary judgment). "If the plaintiff is able to establish any of his pendent state law claims, he can recover against the City of New York under the common law doctrine of *respondeat superior.*" *Anderson v. City of N.Y.*, 817 F. Supp. 2d 77, 98 (E.D.N.Y. 2011) (internal citation omitted).

Here, the Court has found that Plaintiffs have a viable malicious prosecution claim against Detective Marrero as it relates to the charge of the sale of a controlled substance. Therefore, to the extent Plaintiffs seek to impose liability on the City for the remaining malicious prosecution claim, they are allowed to proceed.

## V.  <u>Conclusion</u>

For the reasons set forth above, Defendants' motion for summary judgment is DENIED in PART and GRANTED in PART, as summarized in the chart below:

| Defendants Motion for Summary Judgment | |
|---|---|
| *To Dismiss Plaintiffs' Claims* | *The Court's Ruling* |
| 1) False arrest | DENIED as against Detective Marrero<br>GRANTED as against Detectives Anderson and Roberts and Sergeant Bones |
| 2) Unreasonable search and seizure | DENIED as against Detective Marrero<br>GRANTED as against Detectives Anderson and Roberts and Sergeant Bones |
| 3) Malicious prosecution | DENIED as against Detective Marrero<br>GRANTED as against Detectives Anderson and Roberts and Sergeant Bones. |
| 4) Failure to intervene | GRANTED as against all Defendants |
| 5) Malicious prosecution under state law and *respondeat superior liability* | DENIED |

The Clerk of Court is respectfully directed to terminate the motions, Docs. 64, 78, 83.

It is SO ORDERED.

Dated:    July 31, 2017
          New York, New York

Edgardo Ramos, U.S.D.J.